UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x

ANDRE LEWIS,                                        :

                              Petitioner,           :       **REPORT AND**
                                                            **RECOMMENDATION**
                 - against -                         :       **TO THE HONORABLE**
                                                            <u>**KENNETH M. KARAS**</u> [*]
TIMOTHY MURRAY,                                      :

                              Respondent.           :       03 Civ. 3529 (KMK)(FM)

-------------------------------------------------------x

**FRANK MAAS**, United States Magistrate Judge.

I.      <u>Introduction</u>

            In this habeas corpus proceeding pursuant to 28 U.S.C. § 2254, <u>pro</u> <u>se</u>

petitioner Andre Lewis ("Lewis") challenges his conviction on one count of Robbery in

the First Degree, in violation of Section 160.15(3) of the New York Penal Law, following

a jury trial.  On February 23, 1995, Justice Edwin Torres, who presided at Lewis' trial,

sentenced him to an indeterminate prison term of twelve and one-half to twenty-five

years.

            In his petition, Lewis raises three claims: (a) that the arresting officers

employed an unduly suggestive identification procedure and then lied about it at a

_____

            [*]       This Report and Recommendation was prepared with the assistance of Laureve
Blackstone, a student at Brooklyn Law School.

suppression hearing; (b) that the trial judge improperly denied him the right to proceed

pro se; and (c) that his appellate counsel was ineffective.

For the reasons set forth below, the petition should be denied.

II.      Background

        A.      Relevant Facts

                1.      Pretrial Hearing

        Prior to trial, Justice Allen G. Alpert conducted a combined Wade/Mapp

hearing.[1]  Two Transit Police officers testified at that hearing.  Insofar as relevant, the

first officer, Edward Tucker ("Tucker"), testified that he and his partner chased a man,

later identified as Lewis, after a woman advised them that he had just robbed her.  (H. 13-

14).[2]  After pursuing the perpetrator for approximately one and one-half blocks, Tucker

was able to wrestle him to the ground.  (Id. at 14).

        A few minutes later, the robbery victim, Sara Dzikecwicz ("Dzikecwicz"),

was brought to the arrest scene in a patrol car.  (Id. at 13, 17).  Dzikecwicz walked up to

Lewis and identified him as "the man that robbed me."  (Id. at 17).  At the time of the

identification, Lewis was handcuffed behind his back and a variety of uniformed and

plainclothes police officers were in the vicinity.  (Id. at 18, 31).  Although the

---

[1]      See United States v. Wade, 388 U.S. 218 (1967); Mapp v. Ohio, 367 U.S. 643
(1961).

[2]      "H." refers to the transcript of the pretrial suppression hearing; "T" refers to the
transcript of the trial; "S." refers to the transcript of the sentencing.

identification took place outdoors at night, the area was illuminated by "normal street lighting." (Id. at 19).

The second hearing witness was Sergeant Mark Colamesto ("Sgt. Colamesto") of the Transit Police. Sgt. Colamesto testified that after he arrived at the arrest scene, he drove Dzikecwicz from the location of the robbery to the arrest site a few blocks away. (Id. at 36-38). Once there, Dzikecwicz pointed in the direction of a group of officers (one of whom was Tucker) and said that her assailant was standing next to them. (Id. at 39-40). Dzikecwicz also described the clothing that Lewis was wearing. (Id. at 40). Following her identification of Lewis, Dzikecwicz walked in the direction of the officers who were standing near Lewis. (Id. at 43).

At the conclusion of the hearing, Justice Alpert found that there was probable cause for Lewis' arrest. (Id. at 47-48). With respect to the identification of Lewis, the Justice observed:

> The complaining witness was brought to the scene of the apprehension within minutes of . . . the commission of the robbery. She was brought there by Colamesto, and while she was in the car with Colamesto was asked only the most general non[-]suggestive questions. Indeed, Colamesto would have been entitled to ask her more specific, arguably, more suggestive questions than he did, and those questions would have been proper.

> But Colamesto took great pains to make sure that the questions he asked were only of the most non[-]suggestive and general kind. It was the complaining witness, who of her own volition without any suggestion by the police, pointed out the defendant to the police as the person who had robbed her

minutes before[. S]he then got out of the car and walked directly up to the defendant and stood face-to-face with him and told Tucker as she had just told Colamesto that the defendant was the person who had just robbed her.

The defendant was handcuffed but he was rear cuffed, and he was in the company of several police officers, some of whom were black police officers. Some of those black police officers were in uniform and some were in plain clothes. Even if defendant had been the only black male present, it would not have been an unduly suggestive show-up procedure.

The show-up was conducted entirely appropriately on the basis of the probable cause to arrest the defendant. There was nothing suggestive in any way about the show-up, and it was entirely appropriate law enforcement procedures [sic].

(Id. at 48-50).

2. Trial

a. People's Case

The People's proof at trial would have permitted a reasonable juror to find as follows: On the night of December 16, 1993, Dzikecwicz was walking on 28th Street between Broadway and Fifth Avenue in Manhattan when she was stopped by a man who held a knife at eye level and said, "Just give it up. I don't want to hurt you." (T. 50, 53). After the man began to remove her handbag from her shoulders, Dzikecwicz asked that she be allowed to keep her house keys and a train ticket home that she had purchased earlier in the day. (Id. at 53-54). In response, the man took a little more than $100 from her wallet – including several twenty dollar bills and at least one ten dollar bill – and then

4

began to walk away.  (Id. at 54, 68).  As he left, Dzikecwicz heard a "clin[k]ing" sound which she discovered was a knife that the man had dropped.  (Id. at 54, 66, 69).

After Dzikecwicz noticed two uniformed police officers approaching, she shouted, "That man just robbed me."  (Id. at 54).  The officers then gave chase.  (Id. at 54-55, 72).  At that moment, the only people on 28th Street were Dzikecwicz, Lewis, and the officers.  (Id. at 137).  At the corner of 29th Street and Fifth Avenue, two bystanders tripped Dzikecwicz's assailant and held him until the officers – Tucker and Transit Police Officer Manscalco – were able to place him under arrest.[3]  (Id. at 134).  Subsequently, Sgt. Colamesto and Officer Burke of the Transit Police, who had responded to a radio transmission, brought Dzikecwicz to the arrest site, where she identified Lewis, the person being detained, as the "mugger."  (Id. at 74-75, 142, 188-89, 194-96).

Lewis was transported to a Transit Police office where he was searched.  (Id. at 142-43).  Officer Tucker recovered $137 from Lewis' right front pants pocket and wallet, with most of the money found outside the wallet.  (Id. at 143).  The money seized included four twenty-dollar bills and four ten-dollar bills.  (Id.).

2.    Defense Case

Testifying on his own behalf, Lewis claimed that he was on his way home from a "peepshow" when he observed two police officers running toward him with guns drawn.  (Id. at 214-15).  The officers were yelling, "Stop, Police."  (Id. at 215).  As they

---

[3]    The officers were on "train patrol," but had left the subway so that Manscalco could withdraw money from an ATM machine.  (Id. at 127).

attempted to grab Lewis, he ran away from them, although he also turned around to ask, "What did I do?  What do you want?"  (<u>Id.</u> at 216).

Lewis testified further that, at the corner of 29th Street and Fifth Avenue, two people grabbed him, an act he said was unnecessary because he already had decided to stop.  (<u>Id.</u> at 216, 229-30).  When he protested his innocence, the bystanders urged him to calm down, which he did.  (<u>Id.</u> at 216).  Thereafter, however, the officers slammed him against a fence before arresting him.  (<u>Id.</u>).

Lewis admitted that Dzikecwicz identified him at the scene, but testified that she was mistaken.  (<u>Id.</u> at 217).  Although he had been unemployed for approximately two months, Lewis also testified that the $137 found on his person was money that he previously had earned while incarcerated upstate, and that the money was in his wallet, not his pants pocket.  (<u>Id.</u> at 221-23, 234).

### 2.    Sentencing

On February 23, 1995, Justice Torres sentenced Lewis as a predicate violent felon to an indeterminate term of twelve and one-half to twenty-five years.  (S. 20).  The predicate felony was a robbery conviction which arose out of a series of robberies in Stuyvesant Town during which Lewis carried a knife.  (<u>Id.</u> at 2, 5).

### 3.    Direct Appeal

Lewis appealed his conviction to the Appellate Division, First Department, contending that (a) the trial court improperly denied his request to proceed <u>pro se</u>,

and (b) the twelve and one-half to twenty-five year sentence imposed on him was excessive.  (See Decl. of Michael P. King, Esq., dated May 11, 2004 ("King Decl."), Ex. A (Def.'s Br. on Appeal)).

On September 24, 1998, the Appellate Division affirmed the judgment of conviction.  People v. Lewis, 677 N.Y.S.2d 475 (1st Dep't 1998).  In its decision, the Appellate Division concluded that, by simply asking that he be allowed to cross-examine Dzikecwicz, Lewis "never made a timely and unequivocal request to proceed pro se" and "after being cautioned by the court and counsel, . . . abandoned his request."  Id.  Additionally, the court rejected Lewis' claim that his sentence was an abuse of discretion.  Id.

By letter dated October 15, 1998, Lewis' counsel sought leave to appeal to the New York Court of Appeals on both grounds asserted before the Appellate Division.  (King Decl. Ex. D).  Thereafter, on November 2, 1998, Lewis sent his own letter further detailing his claim that he was improperly denied the right to proceed pro se.  (Id.).

On November 12, 1998, the New York Court of Appeals summarily denied Lewis' application for leave to appeal.  People v. Lewis, 92 N.Y.2d 983 (1998).

4.    Subsequent Procedural History

a.    Motion to Vacate Conviction

On August 2, 1999, Lewis filed a motion pursuant to Section 440.10 of the New York Criminal Procedure Law ("CPL") seeking to vacate his judgment of conviction

7

on the theory that it "was procured by duress, misrepresentation or fraud on the part of the prosecutor and that material evidence adduced at the trial was false and was known to the prosecutor to be false." (See Pet. ¶ 11; King Decl. Ex. G).

As to the first of these contentions, Lewis alleged that the prosecutor's summation affirmatively mischaracterized his defense that Dzikecwicz's identification of him was mistaken, by suggesting that Dzikecwicz was "not lying." (King Decl. Ex. G at 13, 14). Lewis also argued that the prosecutor made other misstatements in her summation, including an assertion that there was "no evidence" that Dzikecwicz's identification of him was an error. (Id. at 15). Lewis contended that this statement was knowingly false because he himself had testified to the contrary. (Id. at 14). With respect to the second claim, Lewis focused on Dzikecwicz's grand jury testimony. In her grand jury testimony, Dzikecwicz never expressly stated that she saw Lewis' face during the robbery. (T. 92-93). Lewis argued that this was inconsistent with Dzikecwicz's trial testimony that she saw his face during the robbery. (King Decl. Ex. G at 40-45).

On October 6, 1999, Justice Torres denied Lewis' CPL § 440.10 motion. (See King Decl. Ex. I). Thereafter, by order entered on January 25, 2000, Justice David Friedman of the Appellate Division, First Department, denied Lewis' application to appeal the denial of his motion. (Id. Ex. L).

b.    Original Habeas Petition

Lewis filed his first federal habeas petition on May 24, 2000.  See Lewis v. Bennett, 00 Civ. 3930 (JSR)(AJP).  Because that petition was a "mixed" petition containing both exhausted and unexhausted claims, Magistrate Judge Peck issued an order to show cause requiring Lewis to state whether he wished to (i) withdraw his petition without prejudice so that he could exhaust his unexhausted claim, (ii) dismiss the unexhausted claim so that the Court could consider the remaining claims, or (iii) take no action, in which event the Court would dismiss his petition as a mixed petition.  (See id., Docket No. 6).  By letter dated September 17, 2000, Lewis chose to pursue the first course, which led to the dismissal of his first habeas petition, without prejudice, on September 22, 2000.  (See id., Docket No. 7).

c.    Writ of Error Coram Nobis

On November 10, 2000, Lewis filed a petition for a writ of error coram nobis in which he argued that "appellate counsel failed to raise various constitutional violations on appeal, after appellant repeatedly requested for her to do so."  (Pet. ¶ 11). The issues that Lewis contended should have been raised were the same as those set forth in his pro se motion to vacate the judgment of conviction.  (See King Decl. Ex. N).

The Appellate Division summarily denied Lewis' coram nobis petition on June 21, 2001.  (King Decl. Ex. M).  On August 8, 2001, Lewis sought to reargue his motion on the theory that his "claims . . . had constitutional validity and . . . that the

District Attorney misstated the facts of the case in [his] response to [Lewis'] writ." (Id. Ex. N).  On May 9, 2002, the Appellate Division denied this motion as well.  (Id. Ex. P).

        4.      Second Habeas Petition

Lewis' current habeas corpus petition is dated May 24, 2002, and was filed in this District on May 16, 2003.  (Docket No. 1).  The face of the petition discloses that it originally was filed in the Northern District of New York, but later was transferred to this District.  (Id.).

III.    Discussion

    A.    Standard of Review

A habeas corpus petition is not a vehicle to relitigate every issue previously determined in state court.  Herrera v. Collins, 506 U.S. 390, 401 (1993).  Instead, a state prisoner seeking habeas relief under Section 2254 must show that he is "in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).  The petitioner bears the burden of proving, by a preponderance of the evidence, that his rights have been violated.  Jones v. Vacco, 126 F.3d 408, 415 (2d Cir. 1997).

Section 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), provides, in part, that:

> An application for a writ of habeas corpus on behalf of a
> person in custody pursuant to the judgment of a State court
> shall not be granted with respect to any claim that was

adjudicated on the merits in State court proceedings unless the adjudication of the claim –

(1) resulted in a decision that was <u>contrary to</u>, or involved an <u>unreasonable application of</u>, clearly established Federal law, as determined by the Supreme Court of the United States.

28 U.S.C. § 2254(d) (emphasis added).

As the Second Circuit noted in <u>Jones v. Stinson</u>, 229 F.3d 112, 119 (2d Cir. 2000), the Supreme Court has "construed the amended statute so as to give independent meaning to 'contrary [to]' and 'unreasonable.' 'Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts.'" (quoting <u>Williams v. Taylor</u>, 529 U.S. 362, 412-13 (2000)). Under the "unreasonable application" clause, a federal habeas court should "ask whether the state court's application of clearly established federal law was objectively unreasonable." <u>Williams</u>, 529 U.S. at 409. This standard does not require that reasonable jurists would all agree that the state court was wrong. <u>Id.</u> at 409-10. Rather, the standard "falls somewhere between 'merely erroneous and unreasonable to all reasonable jurists.'" <u>Stinson</u>, 229 F.3d at 119 (quoting <u>Francis S. v. Stone</u>, 221 F.3d 100, 109 (2d Cir. 2000)).

Section 2254(d)(2) further authorizes the federal courts to grant a habeas writ when a claim considered on the merits in state court "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."

Finally, to the extent that a habeas petition challenges factual findings, Section 2254(e)(1) provides that "a determination of a factual issue made by a State court shall be presumed to be correct" and that "[t]he [petitioner] shall have the burden of rebutting the presumption of correctness by clear and convincing evidence."

"If, after carefully weighing all the reasons for accepting a state court's judgment, a federal court is convinced that a prisoner's custody . . . violates the Constitution, that independent judgment should prevail." Williams, 529 U.S. at 389.

B.      Limitations Period

Under 28 U.S.C. § 2244(d)(1), as amended by the AEDPA, a defendant generally must file a federal habeas corpus petition within one year after the date that his conviction becomes final or the facts giving rise to his claim could have been discovered. 28 U.S.C.§ 2244(d)(1).  The one-year limitations period is subject to the following tolling provision:

> The time during which a properly filed application for State
> post-conviction or other collateral review with respect to the
> pertinent judgment or claim is pending shall not be counted
> toward any period of limitation under this subsection.

28 U.S.C. § 2244(d)(2) (emphasis added).

During the period that Lewis filed his original petition and later Lewis agreed to withdraw it, courts in this Circuit mistakenly assumed that the one-year AEDPA limitations period was tolled during the pendency of a properly-filed habeas petition.  See Walker v. Artuz, 208 F.3d 357, 360 (2d Cir. 2000), rev'd, 533 U.S. 167 (2001).  If so, Lewis had sufficient time to file a coram nobis petition in state court challenging the

effectiveness of his appellate counsel, and, if that motion was denied, to file a new habeas petition, provided that he acted expeditiously. Indeed, apparently recognizing that the schedule was tight, Judge Peck cautioned Lewis to be careful not to violate the AEDPA time limits. (See Lewis v. Bennett, 00 Civ. 3930, Docket No. 6).

The following chart sets forth the limitations calculation applicable to Lewis' case through the filing of his original petition:

| EVENT | DATE | DAYS EXPENDED | DAYS TOLLED | DAYS LEFT |
|-------|------|---------------|-------------|-----------|
| Expiration of time to seek certiorari[4] | 02/10/99 | — | — | 365 |
| Filing of CPL § 440.10 motion | 08/2/99 | 173 | — | 192 |
| Denial of CPL § 440.10 motion | 01/25/00 | — | 176 | 192 |
| Filing of first habeas petition | 05/24/00 | 119 | — | 73 |

It appears that Lewis heeded Judge Peck's admonition since he filed his coram nobis petition on November 10, 2000, forty-nine days after his first habeas petition was dismissed, and filed his second habeas petition on May 24, 2002, only fifteen days

---

[4]     The decision of the Court of Appeals denying Lewis leave to appeal became final ninety days later when the time in which to seek a writ of certiorari expired. See Williams v. Artuz, 237 F.3d 147, 151 (2d Cir. 2001) ("We . . . hold that the AEDPA limitations period specified in Section 2244(d)(1)(A) does not begin to run until the completion of direct appellate review in the state court system and either the completion of certiorari proceedings in the United States Supreme Court, or – if the prisoner elects not to file a petition for certiorari – the time to seek direct review via certiorari has expired.").

after his <u>coram</u> <u>nobis</u> petition was finally denied on May 9, 2002.[5]  Lewis therefore

undoubtedly assumed that his second petition was filed just under the wire.

Unfortunately for Lewis, following the dismissal of his first petition, the

Supreme Court held in <u>Duncan v. Walker</u>, 533 U.S. 167 (2001), that the pendency of a

federal habeas petition <u>does</u> <u>not</u> toll the running of the AEDPA limitations period.  As a

consequence, Lewis' second habeas petition was in fact filed late.  Recognizing the

potential injustice of a midstream change in the law, courts in this Circuit have found

equitable tolling applicable in circumstances where an initial mixed petition was

dismissed, but the petitioner acted with reasonable diligence to exhaust his unexhausted

claims.  <u>See, e.g.</u>, <u>Felton v. Mazzuca</u>, No. 98 Civ. 4567 (KMW), 2004 WL 2072538, at *4

(S.D.N.Y. Sept. 15, 2004) (collecting cases).

Given the dispatch with which Lewis acted, he arguably is entitled to have

the AEDPA statute of limitations equitably tolled in this case.  There is no need to resolve

this question, however, because, even if Lewis' second petition is deemed to be timely, he

would not be entitled to the issuance of a habeas writ.

---

[5]      The denial of a <u>coram</u> <u>nobis</u> petition by the Appellate Division is a final
decision.  <u>See</u> <u>Hizbullahankhamon v. Walker</u>, 255 F.3d 65, 71-72 (2d Cir. 2001).

C.     <u>Lewis' Claims</u>

1.     <u>Improper Show-up</u>

a.     <u>Exhaustion</u>

Lewis' first claim relates to the arrest site show-up preceding his arrest. Lewis contends that the arresting officers employed unduly suggestive show-up procedures because they failed to obtain a description of the assailant from Dzikecwicz before the show-up, told her that there was someone in custody they wanted her to identify, escorted her to the area where he was standing, and lied about escorting her at the suppression hearing. (<u>See</u> Pet. ¶ 12.A).

As noted above, Lewis' show-up claim forms part of the basis for the ineffective assistance of appellate counsel claim asserted in his <u>coram nobis</u> petition. Nevertheless, the state courts were never asked to consider the lawfulness of the show-up as an independent claim. That claim consequently is unexhausted.

A federal habeas court presented with an unexhausted claim may either stay the petition or dismiss it without prejudice so that the petitioner can return to state court to pursue exhaustion. <u>See</u> <u>Duncan v. Walker</u>, 533 U.S. 167, 182-83 (2001) (Stevens, J., concurring); <u>Zarvela v. Artuz</u>, 254 F.3d 374, 381-82 (2d Cir. 2001) (discussing procedures applicable to "mixed" petitions containing both exhausted and unexhausted claims). In this case, this would be a futile exercise because Lewis' unexhausted show-up claim could have been raised on direct appeal. Lewis' direct appeal was finally resolved more than six years ago. Any attempt to inject this issue into a resuscitated direct appeal

at this late stage plainly would be rejected because New York law affords a criminal defendant only thirty days to seek reconsideration of the Court of Appeals' denial of an application for leave to appeal.  See N.Y. Rules of Court § 500.10(b).  Accordingly, a direct state court appeal challenging Lewis' show-up is no longer feasible.  Additionally, pursuant to CPL § 440.10(2)(c), Lewis may not seek further collateral review of his show-up claim because it could have been raised on direct appeal, but was not.  See Bossett v. Walker, 41 F.3d 825, 829 (2d Cir. 1994).

In these circumstances, because the New York courts would treat Lewis' unexhausted show-up claim as procedurally barred, this Court must deem it procedurally defaulted.  Aparicio v. Artuz, 269 F.3d 78, 90 (2d Cir. 2001) (citing Coleman v. Thompson, 501 U.S. 722, 735 n.1 (1991)).  Consequently, federal habeas review is precluded, unless Lewis can demonstrate either "cause for the default and actual prejudice as a result of the alleged violation of federal law," or "that failure to consider the claims will result in a fundamental miscarriage of justice."  Coleman, 501 U.S. at 750.  Accord Fama v. Comm'r of Corr. Servs., 235 F.3d 804, 809 (2d Cir. 2000); Glenn v. Bartlett, 98 F.3d 721, 724 (2d Cir. 1996).  To make the latter showing, Lewis must establish that he is "actually innocent."  Aparicio, 269 F.3d at 90.

Here, if Lewis were able to show that his appellate counsel provided ineffective assistance of counsel because she failed to incorporate his show-up claim in his brief on  appeal, that might constitute adequate cause for his failure to exhaust that claim.  As shown below, however, his appellate counsel was not ineffective.  Moreover,

Lewis has not shown that he is actually innocent.  See Bousley v. United States, 523 U.S. 614, 624 (1998) ("To establish actual innocence, [the] petitioner must demonstrate that, in light of all the evidence, it is more likely than not that no reasonable juror would have convicted him.") (internal quotation marks omitted).  The Court therefore lacks jurisdiction to consider his unexhausted show-up claim.

b.    Merits

Lewis would fare no better even if the Court were to consider the merits of his show-up claim.  To prevail on that claim at the state court hearing, Lewis had to establish that the pretrial identification procedures were so suggestive that they created "a very substantial likelihood of irreparable misidentification."  United States v. Mohammed, 27 F.3d 815, 821 (2d Cir. 1994) (quoting Simmons v. United States, 390 U.S. 377, 384 (1968)).  However, the focus of the inquiry is on the possibility of misidentification, rather than police conduct, because a suggestive procedure "does not in itself intrude upon a constitutionally protected interest."  Wray v. Johnson, 202 F.3d 515, 524 (2d Cir. 2000) (quoting Manson v. Brathwaite, 432 U.S. 98, 113 n.13 (1977)).  Thus, "even a suggestive out-of-court identification will be admissible if, when viewed in the totality of the circumstances, it possesses sufficient indicia of reliability."  Mohammed, 27 F.3d at 821 (quoting United States v. Simmons, 923 F.2d 934, 950 (2d Cir. 1991)); see also Manson, 432 U.S. at 114 ("reliability is the linchpin in determining the admissibility of identification testimony").

When the police employ a suggestive identification procedure, the factors that should be considered to determine the likelihood of misidentification include "[i] the opportunity of the witness to view the criminal at the time of the crime, [ii] the witness' degree of attention, [iii] the accuracy of the witness' prior description of the criminal, [iv] the level of certainty demonstrated by the witness at the confrontation, and [v] the length of time between the crime and the confrontation." Neil v. Biggers, 409 U.S. 188, 199-200 (1972). "A good or poor rating with respect to any one of these factors will generally not be dispositive . . . . In each case, the factors must be assessed in light of the totality of the circumstances." United States v. Concepcion, 983 F.2d 369, 377-78 (2d Cir. 1992).

Although Dzikecwicz undoubtedly was frightened by the events unfolding on 28th Street, she apparently had several minutes to look at her assailant while she was negotiating for her keys and train ticket and he was taking her money. (T. 53-54). Additionally, Dzikecwicz testified at trial that she spent some time looking at her assailant's face. (Id. at 60-61). At the show-up, Dzikecwicz also proceeded cautiously, going so far as to walk up to Lewis to make sure he was the right man. Moreover, she never expressed any hesitancy about the accuracy of her identification, which took place shortly after the robbery. In these circumstances, although Dzikecwicz had not previously been asked for a description of the robber, each of the other Biggers factors augurs in favor of admitting Dzikecwicz's identification into evidence at trial.

Accordingly, while there may have been minor discrepancies regarding the show-up procedures between the People's hearing witnesses or between their trial and hearing testimony, Lewis has not shown, as he must, that Justice Alpert's decision to admit Dzikecwicz's identification testimony was contrary to, or an unreasonable application of clearly established Federal law. Similarly, Lewis has not overcome the statutory presumption that Justice Alpert's factual findings were correct.

For these reasons, Lewis' show-up claim would have to be denied even if it were properly before the Court.

## 2. Denial of Right to Proceed Pro Se

Lewis' second claim is that the trial judge violated his Sixth Amendment right to proceed pro se. (Pet. ¶ 12.B). The Appellate Division rejected this claim, finding that, "[b]y merely seeking to participate in the defense to the extent of questioning the complainant on cross-examination, [Lewis] never made a timely and unequivocal request to proceed pro se." Lewis, 677 N.Y.S.2d at 475. The Appellate Division also concluded that, "after being cautioned by the court and counsel [as to the undesirability of acting on his own behalf, Lewis] abandoned his request to personally cross-examine the complainant." Id.

Lewis' claim with respect to his right of self-representation is based on a discussion that occurred following the completion of Dzikecwicz's direct testimony. At that time, Lewis' trial attorney, Anastasios Sarikas, Esq., told Justice Torres that his

"client ha[d] something to put on the record." (T. 83). The following exchange then

ensued:

> THE COURT:          It has to be through you.
>
> MR. SARIKAS:        He wants to examine witnesses himself.
>                     Mr. Lewis wants to examine the
>                     witnesses himself.
>
> THE COURT:          I think that is very foolhardy.  You're
>                     being represented by an excellent,
>                     competent and experienced attorney and
>                     universally regarded as such.
>
>                     It would be very foolhardy for you as a
>                     lay person, a man of your tender years to
>                     attempt to examine a witness under these
>                     circumstances.  So you should defer to
>                     the judgment of your attorney, and not
>                     try to substitute what little you think you
>                     know with what he knows as a
>                     professional, a member of the Bar and
>                     vast experience in these matters.  Defer
>                     to him and let him conduct the trial.
>
> MR. SARIKAS:        I've advised him against doing what he
>                     wants.
>
> THE COURT:          Do you know what I said?
>
> [LEWIS]             Yes, but you must understand –
>
> THE COURT:          You can write down, if you wish, any
>                     question you might request that he ask of
>                     her.  Do it that way, not stand up and
>                     yourself in an immature manner attempt
>                     to act like a lawyer.  You're not an
>                     attorney.
>
>                     You can write down the questions and let
>                     him ask it.

(Pause)

THE COURT:        Okay?

MR. SARIKAS:        We can commence.

(T. 83-84).  Following this exchange, the possibility of Lewis cross-examining witnesses himself did not surface again.

A criminal defendant has a constitutional right to proceed pro se and cannot be forced to use counsel at trial even though that may be in his best interest.  Faretta v. California, 422 U.S. 806, 819 (1975).  Before accepting a waiver of counsel, however, a court must assure itself that the defendant is aware of his right to counsel and the possible adverse consequences of waiving that right.  Id. at 835.  Additionally, the decision to proceed pro se must be expressed "clearly and unequivocally."  Id.

After a trial has commenced, however, a defendant's right to proceed pro se is no longer absolute.  Instead, a trial court must "balance the legitimate interests of the defendant in self-representation against the potential disruption of the proceedings already in progress."  Williams v. Bartlett, 44 F.3d 95, 99-100 & n.1 (2d Cir. 1994) (citing United States v. Matsushita, 794 F.2d 46, 51 (2d Cir. 1986)).  In the course of doing so, the judge should consider (a) the reasons underlying the request, (b) the quality of the defendant's existing counsel, and (c) "the party's prior proclivity to substitute counsel."  Id. (citing Sapienza v. Vincent, 534 F.2d 1007, 1010 (2d Cir. 1976)).

In this case, Lewis never made a clear and unequivocal request to proceed pro se.  Instead, the sole request that he advanced through his attorney was that he be

permitted to examine witnesses.  (Id. at 83).  By the time the request was made, however, Lewis' counsel had already participated in the voir dire and delivered an opening statement.  Accordingly, rather than making a timely request to forego counsel entirely, Lewis was proposing a form of "tag team" match in which both he and his attorney would represent his interests during parts of the trial.

On this record, Lewis clearly cannot show, as he must, that the Appellate Division's conclusion that he had failed to make a timely and unconditional request to serve as his own counsel was either contrary to, or an unreasonable application of, clearly established Federal law.  Nor can he establish that the Appellate Division's finding that Lewis had abandoned his request was an unreasonable determination of the facts.

Additionally, because Lewis' request was made after the trial commenced, Justice Torres was entitled to consider other factsor, such as the quality of Lewis' counsel (which he remarked was high) and the reason underlying the request (which evidently was a desire to participate in the questioning of witnesses, but not to forego the assistance of counsel in connection with other aspects of the trial, such as summation).  In these circumstances, it was well within Justice Torres' discretion to deny Lewis' request for self-representation.  Moreover, while the Justice clearly thought that Lewis's request to cross-examine witnesses was ill-advised, and suggested an alternative, it appears that he did not deny the request, asking, instead, whether that was "okay."  (Tr. 84).  In the absence of any response from Lewis, and with defense counsel's representation that "We

can commence," (id.), Justice Torres had no reason to believe that Lewis' request – which was never again raised during the trial – was being pursued.

Lewis therefore is not entitled to the issuance of a habeas writ on the theory that his Sixth Amendment right to self-representation was improperly curtailed.

3.    Ineffective Assistance of Appellate Counsel

Lewis' final claim is that his appellate counsel was constitutionally ineffective because she failed to incorporate into her brief on appeal a claim that the arresting officers used unduly suggestive show-up tactics.  (Pet. ¶ 12.B).  Included among the papers that Lewis has presented to this Court in connection with this claim is a December 19, 1997, letter to Lewis from his appellate counsel, Carol A. Zeldin, Esq., the Assistant Attorney-in-Charge of the Center for Appellate Litigation.  (See Pet. Ex. XI at 5).  In that letter, Ms. Zeldin stated that her brief on his behalf to the Appellate Division raised the two issues that she considered the strongest, i.e., the denial of Lewis' right to proceed pro se and the length of his sentence, and that there were no other issues that she thought were "worth presenting to the Court."  Ms. Zeldin also indicated that if Lewis disagreed, he could seek permission to file a supplemental brief, and she explained the procedures for doing so.  (Id.)

In order to prevail on an ineffective assistance of counsel claim, Lewis must demonstrate that his counsel's performance (a) "fell below an objective standard of reasonableness" and (b) that there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  Strickland

v. Washington, 466 U.S. 668, 688, 694 (1984).  The Strickland standard applies not only

to trial counsel, but also to an attorney handling a defendant's appeal as of right.  Evitts v.

Lucey, 469 U.S. 387, 395-96 (1985); Aparicio, 269 F.3d at 95.

In preparing a brief, appellate counsel is not required to raise every claim

arising out of a trial and has the discretion to eliminate weaker ones.  Jones v. Barnes, 463

U.S. 745, 751-54 (1983); Mayo v. Henderson, 13 F.3d 528, 533 (2d Cir. 1994) ("counsel

does not have a duty to advance every nonfrivolous argument that could be made").

Furthermore, there is a "strong presumption that counsel's conduct falls within the wide

range of reasonable professional assistance."  Strickland, 466 U.S. at 689.  In order to

satisfy the first prong of the Strickland standard, Lewis therefore must show that appellate

counsel did something more than omit a nonfrivolous argument that Lewis wished to

pursue.  See Jones, 463 U.S. at 753-54; Aparicio, 269 F.3d at 95.  He must establish that

counsel opted not to raise "significant and obvious issues while pursuing issues that were

clearly and significantly weaker."  Mayo, 13 F.3d at 533; Bragg v. Kuhlman, No. 97 Civ.

3025 (SHS), 1998 WL 867245, at *3 (S.D.N.Y. Dec. 14, 1998).

Lewis' claim fails to meet either branch of the Strickland test.  First, as

previously indicated, the circumstances surrounding Dzikecwicz's show-up identification

of Lewis do not suggest that she misidentified Lewis.  Second, even if Lewis' challenge

to the identification procedure was deemed to be more meritorious than the two appellate

issues that actually were raised, Lewis has not shown, as he must, that there is a

reasonable probability that the outcome of his appeal would have been different had it

been incorporated into the appellate brief. Indeed, for the reasons previously set forth, there is no reasonable prospect that his conviction would have been set aside on this basis.

Lewis' ineffective assistance of appellate counsel therefore is also meritless.

IV.    Conclusion

For the foregoing reasons, Lewis' habeas petition should be denied. Moreover, because Lewis has not made a substantial showing of the denial of a constitutional right, as required by 28 U.S.C. § 2253(c)(2), a certificate of appealability should not be issued.

V.    Notice of Procedure for Filing of Objections to this Report and Recommendation

The parties are hereby directed that if they have any objections to this Report and Recommendation, they must, within ten (10) days from today, make them in writing, file them with the Clerk of the Court, and send courtesy copies to the chambers of the Honorable Kenneth M. Karas, United States District Judge, and to the chambers of the undersigned, at the United States Courthouse, 500 Pearl Street, New York, NY 10007, and to any opposing parties. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72(b). Any requests for an extension of time for filing objections must be directed to Judge Karas. Any failure to file timely objections will result in a waiver of those objections for

purposes of appeal.  See Thomas v. Arn, 474 U.S. 140 (1985); 28 U.S.C. § 636(b)(1);

Fed. R. Civ. P. 6(a), 6(e), 72(b).

Dated:       New York, New York
             May 24, 2005

                                         _____
                                              FRANK MAAS
                                         United States Magistrate Judge

Copies to:

Hon. Kenneth M. Karas
United States District Judge

Andre Lewis
DIN # 95-A-1601
Groveland Correctional Facility
P.O. Box 104
Sonyea, New York 14556

Michael P. King, Esq.
Assistant Attorney General
Office of the Attorney General
of the State of New York
120 Broadway, 22nd Floor
New York, New York 10271
Fax:    (212) 416-8010